# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN ZYSK<br>544 South Pomona Road, 1st floor<br>Pomona, NJ 08240 | : <br> : <br> : <br> : | CIVIL ACTION<br>No.<br><br>TRIAL BY JURY DEMANDED |
| Plaintiff, | : <br> : | |
| v. | : <br> : | |
| MONTGOMERY COUNTY<br>60 Eagleville Road<br>Eagleville, PA 19403 | : <br> : <br> : <br> : | |
| JOHN DOE CORRECTIONS OFFICERS<br>60 Eagleville Road<br>Eagleville, PA 19403 | : <br> : <br> : <br> : | |
| PRIMECARE MEDICAL, INC.<br>60 Eagleville Road<br>Eagleville, PA 19403 | : <br> : <br> : <br> : | |
| JOHN DOE MEDICAL DIRECTOR<br>60 Eagleville Road<br>Eagleville, PA 19403 | : <br> : <br> : <br> : | |
| & | : <br> : | |
| JOHN DOE MEDICAL PROVIDER<br>60 Eagleville Road<br>Eagleville, PA 19403 | : <br> : <br> : <br> : | |
| Defendants. | : | |

## **COMPLAINT**

Plaintiff, Shawn Zysk, by and through his attorneys, Brian Zeiger, Esq. and Laura Zipin, Esq., hereby alleges the following:

## **PARTIES**

1.  Plaintiff Shawn Zysk is an adult individual who currently resides at 544 South Pomona

1

Road, Pomona, NJ 08240.

2. Defendant Montgomery County is a Municipality in Pennsylvania, doing business at 60 Eagleville Road, Eagleville, PA 19403, which owns and operates the Montgomery County Correctional Facility ("MCCF").

3. Defendant PrimeCare Medical, Inc. ("PrimeCare") is a subcontractor of Defendant Montgomery County, doing business at 60 Eagleville Road, Eagleville, PA 19403.

4. Defendant John Doe Medical Director is and was at all times relevant to this action the Medical Director at MCCF. They are being sued in their individual and official capacity. Doe was at all relevant times a policymaker with respect to customs, practices, policies, and procedures at MCCF. Doe was personally involved in Plaintiff's medical treatment.

5. Defendants John Doe Medical Providers were working as medical professionals at all times relevant to the instant matter, and regularly conducted business at 60 Eagleville Road, Eagleville, PA 19403; they were all personally involved in depriving Plaintiff of needed medical care, and are all being sued in their individual capacity.

6. Based upon information and belief, John Doe Medical Providers were employees of Defendant PrimeCare at all times relevant to the instant matter, and conduct business at 60 Eagleville Road, Eagleville, PA 19403.

7. Defendants John Doe Corrections Officers were all working as corrections officer at the MCCF at all times relevant to the instant matter; they are all being sued in their individual capacity and all regularly conduct business at 60 Eagleville Road, Eagleville, PA 19403.

8. At all times material hereto, the Defendants acted under color of law and within the course and scope of their employment, pursuant to the customs, policies, practices, ordinances,

2

regulations, and directives of Defendant Montgomery County.

## JURISDICTION AND VENUE

9. This action is brought pursuant to 42 U.S.C. § 1983.

10. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343.

## FACTUAL BACKGROUND

11. Plaintiff re-alleges each and every averment as set forth previously, as if the same were set forth here in full.

12. On or about August 4, 2024, Plaintiff had surgery at Cooper Hospital in New Jersey to heal a cut on his right big toe. The tip of Plaintiff's toe was removed, but the bone was fully intact.

13. On or about August 10, 2024, Plaintiff was taken into custody at the MCCF due to a probation violation—he was not arrested on a new charge.

14. At intake, Plaintiff told staff at the MCCF about his toe.

15. Defendant Doe set up Plaintiff's follow-up appointment so his stitches would be properly removed from his foot at the end of August 2024.

16. Plaintiff was not taken to his follow-up appointment, causing the stiches and the wound in his foot to become infected.

17. Eventually, in the first week of October 2024, the stitches were removed from Plaintiff's toe at the MCCF.

18. Plaintiff complained to John Doe Defendants that his foot was sore and swollen and that he needed medical attention.

19. In the third week of October 2024, Plaintiff was seen by a John Doe Medical Defendant,

3

who told Plaintiff his foot was "fine."

20. At some point in time after the October 2024 meeting with a John Doe Medical Defendant, Plaintiff was housed in a "boat" in the medical wing of the prison.

21. Plaintiff spiked a fever of 103.7 degrees due to the untreated infection in his foot.

22. John Doe guards helped him by asking John Doe Medical Defendants to aid Plaintiff.

23. John Doe Medical Defendants failed to provide Plaintiff with any real help, but instead gave him antibiotics and Tylenol.

24. Plaintiff was getting sicker and sicker; he complained to John Doe Medical Defendants and to John Doe Correctional Defendants.

25. Eventually, Plaintiff's condition was so dire, he was seen by a John Doe Medical Defendant who was doctor.

26. The doctor ordered Plaintiff sent immediately to Thomas Jefferson Einstein Hospital in Montgomery County.

27. Plaintiff was given intravenous antibiotics at the hospital.

28. Plaintiff had osteomyelitis—a bone infection—in his foot.

29. Plaintiff's toe was amputated and a piece of bone in his foot was removed.

30. Plaintiff was given a PICC (Peripherally Inserted Central Catheter) line to deliver long-term intravenous antibiotics.

31. Plaintiff remained at the hospital for two weeks before being sent back to MCCF.

32. When Plaintiff was returned to MCCF, the PICC line was still inserted into his body so he could continue his course of antibiotics.

33. Despite this, Plaintiff was never given antibiotics through the PICC line after returning to

4

MCCF, and the PICC line was never flushed to insure it did not become infected.

34. Of course, the PICC line became infected.

35. John Doe Defendant Medical Doctor ordered Plaintiff back to the hospital.

36. Plaintiff spent several days in the hospital.

37. Upon release, Plaintiff was given oral antibiotics to keep on his person.

38. However, upon return to MCCF, he was ordered to give the medication to John Doe Medical Providers.

39. John Doe Medical Providers did not give Plaintiff his antibiotics.

40. In December 2024, therefore, Plaintiff returned to the hospital for the third time due to the lack of antibiotics.

41. When returned to the prison, Plaintiff again was not given the proper course of antibiotics.

42. He remained at the MCCF for six additional weeks until the infection in his foot worsened.

43. He was sent back to the hospital in January 2025.

44. Due to Plaintiff's worsening osteomyelitis, the surgeon removed the entire metatarsal bone and trimmed the bone on the remaining part of his foot.

45. Plaintiff now walks with a cane, which he will need for the rest of his life.

46. As a result of the amputation, the second toe has become permanently deformed.

47. Plaintiff is an electrician and is severely limited in his ability to perform his job.

48. Defendants Montgomery County and PrimeCare have a long and distinguished history of denying inmates medical treatment:

5

a. *D'Agostino v. Montgomery County, et al.*, No. 2:11-cv-07728-CMR, in which the plaintiff alleged that medical doctors, despite knowing that the plaintiff was confined to a wheelchair and unable to move his legs, failed to monitor him for more than 48 hours, leading to permanent physical injury due to an untreated spinal abscess;

b. *Hasty v. Montgomery County, et al.*, No. 2:12-cv-04335-RBS, in which the plaintiff alleged that medical providers failed to respond to the plaintiff's priapism (a painful and continuous erection), leading to the plaintiff's permanent impotence;

c. *Gentile v. Smith, et al.*, No 2:12-cv-07013-TJS, in which the plaintiff alleged that he was beaten by correctional officers and, following this assault, medical providers left him overly sedated and handcuffed in four-point restraints for three days without food or the ability to use the bathroom, resulting in the plaintiff being hospitalized and suffering permanent scarring and pain;

d. *Kenney v. Montgomery County, et al.*, No. 2:13-cv-02590-EGS, in which the plaintiff alleged that medical providers failed to properly monitor the 25-year-old-decedent who presented with obvious signs of a common and treatable cardiac condition, leading to organ failure and death;

e. *Valladares v. Pike County, et al.*, No. 2:14-cv-02674-AB, in which the plaintiff alleged that medical providers failed to respond to a clearly displaced fracture in his finger, leading to permanent loss of full usage of the plaintiff's finger and hand;

f. *Minnich v. Montgomery County, et al.*, No. 2:14-cv-07236-MH, in which the plaintiff alleged that medical providers ignored clearly expressed suicidal ideation and failed to put the decedent on suicide watch, leading to the decedent's suicide by hanging;

6

  g. *Gibbons v. Montgomery County, et al.*, No. 2:16-cv-01233-MH, in which the plaintiff alleged that after tearing his Achilles tendon, he was denied medical care for weeks, leading to a more complicated surgery than would have otherwise been necessary and, in turn, causing permanent pain and limitations;

  h. *Devine v. Montgomery County, et al.*, No. 2:18-cv-04652-GEKP, in which the plaintiff, as in *Hasty*, alleged that medical providers failed to respond to the plaintiff's priapism, leading to his permanent impotence;

  i. *Lynch v. PrimeCare Medical, Inc., et al.*, No. 2:19-cv-04511-JPH, in which the plaintiff alleged that medical providers refused to continue his necessary Klonopin prescription, resulting in severe withdrawal symptoms including nightmares, inability to work, pain, seizures, loss of consciousness, and panic attacks; and

  j. *Rogers v. Montgomery County, et al.*, No. 2:19-cv-04921-JDW, in which the plaintiff alleged that medical providers failed to respond to the decedent's clear symptoms of medical distress, including vomiting and inability to breathe or support himself, leading to the decedent's cardiac arrest and death.

49. At all times relevant, Montgomery County contracted with PrimeCare to provide medical care to all prisoners and pretrial detainees housed in the MCCF.

50. Montgomery County, along with PrimeCare, was responsible for creating, implementing, and enforcing policies, practices, and procedures to ensure that all pretrial detainees and prisoners are provided proper medical healthcare while in their custody.

51. As a direct and proximate cause of the Defendants' actions and inactions, Plaintiff suffered immense physical injuries, and the delay in care caused him to have an invasive surgical

7

procedure, and eventually an amputation.

52. Montgomery County, along with PrimeCare, failed to create, implement, and enforce policies, practices, and procedures to ensure that proper care was provided to Plaintiff.

53. Montgomery County, along with PrimeCare, failed to ensure medical personnel properly examined inmates who reported physical health complaints while in their custody.

54. Montgomery County, along with PrimeCare, failed to ensure that PrimeCare referrals were properly referred to outside medical professionals to provide care for inmates.

55. Montgomery County, along with PrimeCare, failed to provide medical personnel and staff to treat inmates with physical complaints and medical conditions while living at the MCCF.

**COUNT I:**
**FAILURE TO PROTECT AND DENIAL OF MEDICAL CARE**
**EIGHTH AMENDMENT – PURSUANT TO 42 U.S.C § 1983**
**PLAINTIFF V. ALL DEFENDANTS**

56. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

57. Plaintiff repeatedly complained of severe pain.

58. Defendants did not properly investigate or treat Plaintiff's medical complaints.

59. Defendants did not properly learn the cause or condition of Plaintiff's medical complaint.

60. Defendants did not provide Plaintiff with proper medical care.

61. Defendants failed to protect Plaintiff's physical well-being.

62. Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being ignored Plaintiff's complaints of physical pain.

63. Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

being ignored Plaintiff's obvious need for medical treatment and evaluation.

64. Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being denied Plaintiff medical care.

65. Defendants deliberately, recklessly, and with conscious disregard for Plaintiff's well-being failed to ensure that Plaintiff received prompt medical attention.

66. Defendants acted deliberately, recklessly, and with a conscious disregard of the obvious risk that Plaintiff had a serious medical issue.

67. Defendants' actions caused Plaintiff to needlessly suffer, served no penological purpose, and caused him immense pain; their conduct eventually caused Plaintiff to need a far more invasive surgery that resulted in a permanent injury.

68. As a direct and proximate cause of Defendants' actions, Plaintiff suffered injury, immense physical pain, humiliation, and fear.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, attorney's fees, and allowable costs of suit and brings this action to recover the same. Plaintiff is not seeking punitive damages against the Municipality.

**COUNT II:**
**SUPERVISOR LIABILITY –**
**EIGHTH AMENDMENT – PURSUANT TO 42 U.S.C. § 1983**
**PLAINTIFF V. DEFENDANT DOE MEDICAL DIRECTOR**

69. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

70. Defendant Doe Medical Director was deliberately indifferent to the needs of inmates being held at the MCCF.

71.     Upon information and belief, Defendant was aware that certain policies and customs posed a grave danger to inmates detained in the Correctional Facility, including Plaintiff.

72.     Defendant maintained a policy of staffing the MCCF with inadequate medical providers.

73.     Defendant did not properly refer Plaintiff to a physician to treat his complaints of pain.

74.     Defendant did nothing to implement corrective policy or customs, despite knowing that existing policies posed a serious danger to inmates and pretrial detainees, including Plaintiff.

75.     Defendant was deliberately indifferent to the well-being of the inmates detained in the MCCF, including Plaintiff.

76.     Defendant knew of his supervisory failures and knew that ill detainees were not receiving adequate treatment, but deliberately failed to correct the problem.

77.     Defendant was aware of a substantial risk that ill detainees would not receive proper medical care.

78.     Defendant was deliberately indifferent to the consequences of their established policies and customs.

79.     Defendant's establishment and maintenance of the above-mentioned policies and customs directly caused the plaintiff to be deprived of his constitutional rights.

80.     As a direct and proximate result of Defendant's deliberate indifference, Plaintiff suffered immense physical pain, humiliation, fear, and physical injuries.

81.     Plaintiff also makes a claim for such injuries, damages and consequences resulting from the incident of which he has no present knowledge.

WHEREFORE, Plaintiff claims Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorney's fees, and allowable costs of suit and brings this action to recover the same.

## COUNT III:
## MUNICIPAL LIABILITY – PURSUANT TO 42 U.S.C. § 1983
## PLAINTIFF V. DEFENDANTS MONTGOMERY COUNTY and PRIMECARE

82. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

83. Defendants Montgomery County and PrimeCare promulgated and maintained policies and customs, as pled at length above, which were the moving force that caused Plaintiff's constitutional and statutory rights to be violated.

84. Defendants Montgomery County and PrimeCare failed to adhere to protocol in detecting and safeguarding inmates who made medical complaints.

85. Defendants Montgomery County and PrimeCare maintained a policy of not staffing the facility with the proper doctors and medical staff to treat the medical needs of inmates.

86. Defendants Montgomery County and PrimeCare maintained a policy of not having a medical provider properly examine inmates complaining of pain.

87. All of the pled policies and customs were implemented before, during, and after Plaintiff's detention at the Correctional Facility.

88. Defendants Montgomery County and PrimeCare knew of the dangers posed by these policies and customs.

89. Specifically, Defendants Montgomery County and PrimeCare were fully aware prior to the time period of Plaintiff's incarceration of the serious and extreme danger posed by not

11

properly providing medical care to inmates.

90. Despite this prior knowledge, Defendants Montgomery County and PrimeCare took no steps to enact proper policies to remedy the problematic policies and customs.

91. Had Defendants Montgomery County and PrimeCare properly promulgated appropriate protocol, not had an improper custom, or had adequately trained and/or supervised the individual defendants, Plaintiff would have received appropriate care and supervision.

92. Defendants Montgomery County and PrimeCare were deliberately indifferent to Plaintiff's constitutional rights.

93. Defendants Montgomery County and PrimeCare's policies and customs were a direct and proximate cause of Plaintiff's injuries and damages.

94. As a direct and proximate result of Defendants Montgomery County and PrimeCare's policies and customs, Plaintiff suffered immense physical pain, humiliation, fear, and physical injuries.

95. Plaintiff also makes a claim for such injuries, damages and consequences resulting from the incident of which he has no present knowledge.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, delay damages, interest, attorney's fees, and allowable costs of suit, and brings this action to recover same. Plaintiff is not seeking punitive damages against the Municipality.

## COUNT IV:
## VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) – PENNSYLVANIA LAW
## PLAINTIFF V. DEFENDANT PRIMECARE

96. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this

Complaint and incorporates them herein by reference as if the same were set forth at length.

97. Defendant PrimeCare's negligence, by and through its agents, servants, and/or employees, within the course and scope of their agency and employment were the cause of Plaintiff's damage.

98. Upon information and belief, Defendants PrimeCare employed or hired the individual Defendants to provide medical services at the MCCF on their behalf.

99. The individual employees were providing medical services at the time of the incident during the course of and within the scope of their employment.

100. The individual Defendants' medical services were for the purpose of benefiting PrimeCare.

101. Plaintiff makes a claim for such injuries, damages, and consequences resulting from the individual Defendants' negligence as outlined within the instant complaint, for which PrimeCare is vicariously liable.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, punitive damages, delay damages, interest, attorney's fees, and allowable costs of suit, and brings this action to recover same.

### COUNT V: MEDICAL NEGLIGENCE – PENNSYLVANIA LAW PLAINTIFF V. DEFENDANTS MEDICAL DIRECTOR DOE AND MEDICAL PROVIDERS DOE

102. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

103. Defendants PrimeCare and Doe owed Plaintiff a duty of care.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

104. Defendants breached the duty of care owed to Plaintiff.

105. The negligent conduct of Defendant PrimeCare, in their role as medical provider to MCCF, consists of:

   a. failure to properly hire, train, and supervise their employees;

   b. failure to oversee and monitor employees;

   c. failure to implement policies and procedures to safeguard inmates;

   d. failure to implement policies and procedures to ensure inmates were given the proper medical care; and

   e. failure to properly provide medical care and treatment to inmates under their care.

106. The negligent conduct of the individual Defendants, in the course and scope of their employment with either Defendant PrimeCare or Defendant Montgomery County, consists of the following:

   a. negligently and recklessly ignoring Plaintiff's repeated and consistent complaints of pain;

   b. negligently and recklessly failing to properly review medical history records to ensure that Plaintiff's medical conditions were apparent and readily known;

   c. negligently and recklessly failing to provide appropriate medical attention to Plaintiff;

   d. negligently and recklessly failing to properly administer necessary medication to treat Plaintiff's cause, condition, and complaints of pain;

   e. negligently failing to recognize the appropriate required medical care required by Plaintiff;

   f. failure to have a proper treatment plan in place for the Plaintiff's medical needs;

    g. failure to select and retain only competent healthcare providers, including physicians, nurses, and other healthcare professionals treating Plaintiff;

    h. failure to oversee and monitor all MCCF medical providers treating Plaintiff;

    i. failure to formulate, adopt, and enforce policies and procedures to ensure quality and care for patients, including policy and procedures requiring the monitoring of Plaintiff;

    j. negligently failing to properly examine and treat Plaintiff;

    k. failing to perform proper testing;

    l. failing to properly evaluate Plaintiff's medical issues and needs;

    m. failing to properly diagnosis Plaintiff's medical ailment;

    n. failing to properly refer Plaintiff to the appropriate doctor or specialist.

107. As a direct and proximate cause of Defendants' negligence, Plaintiff experienced significant pain and suffering.

108. As a direct and proximate cause of Defendants' negligence, Plaintiff was forced to undergo a significant surgery that left him with a lifelong physical impairment.

    WHEREFORE, Plaintiff claims of Defendants a sum in excess of five million dollars ($5,000,000) in compensatory damages, delay damages, interest, attorney's fees, and allowable costs of suit, and brings this action to recover same.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 19102
215.546.0340

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to each count and each Defendant.

                                              RESPECTFULLY SUBMITTED,

September 10, 2025                             */s/Brian Zeiger*
DATE                                              BRIAN ZEIGER
                                                   PA ID NO. 87063

                                                 */s/ Laura Zipin*
                                                 LAURA ZIPIN
                                                 PA ID NO. 324914

                                                 LEVIN & ZEIGER, LLP
                                                 TWO PENN CENTER
                                                 1500 JFK BLVD STE 620
                                                 PHILADELPHIA, PA 19102
                                                 215.546.0340
                                                 *zeiger@levinzeiger.com*
                                                 *zipin@levinzeiger.com*